1
2
3

**KSB Litigation, P.S.**
Jeffry K. Finer, WSBA # 14610
510 West Riverside, 3rd Floor
Spokane, WA 99201 509 981-8960
Email: jfiner@ksblit.legal

4
5
6
7

**Law Office of Andrew S. Biviano, PLLC**
Andrew S. Biviano, WSBA #38086
25 West Main Avenue, Suite 218
Spokane, WA  99201 (509) 209-2630
Email: andrewbiviano@me.com

8
9
10

**Disability Rights Washington**
David R. Carlson, WSBA # 35767
901 N. Monroe, Suite 340
Spokane, WA 9921 (206) 324-1521
Email: davidc@dr-wa.org

11

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

12
13
14
15
16
17
18
19
20
21
22

| | |
|---|---|
| CHRISTOPHER SENN; JASON BEWLEY; JERED FULLEN, DISABILITY RIGHTS WASHINGTON, and JEWELS HELPING HANDS,<br><br>        Plaintiffs,<br><br>    vs.<br><br>CITY OF SPOKANE, a municipal corporation; SPOKANE COUNTY, a municipal corporation; OZZIE KNEZOVICH, in his official capacity as Spokane County Sheriff; CRAIG MEIDL, in his official capacity as Spokane Police Chief;<br>        Defendants. | NO.  2:22-cv-254<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF: 1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

## I.    __INTRODUCTION__

1.1    For several months, the City of Spokane, Spokane County, and State of Washington have been engaged in heated discussions about how to manage an encampment of unhoused people near I-90 and Freya Street, colloquially called "Camp Hope." Omitted from these discussions is the most important factor that should be considered: the rights of the people who live at Camp Hope. While discussions often centered on the question of what government should do regarding these residents, little to no attention has been paid to the question of what government *can* do within the bounds of the Constitution and law.

1.2    As a result, Spokane County Sheriff Ozzie Knezovich and Spokane Chief of Police Craig Meidl have repeatedly and publicly announced that they will, in the near future, forcibly relocate all the residents of Camp Hope, arrest those who refuse to leave, and remove property on the site. Neither Knezovich nor Meidl appears to have considered the rights of the residents in this situation. All the residents reside on the property with the consent of the landowner, Washington State Department of Transportation (WSDOT). Thus, none of the residents are committing trespass or any other criminal offense merely by their presence. While there are reports of increased crime in the surrounding neighborhood, this does not provide probable cause to remove or arrest all the people who live in the area. Just as the government cannot evict all residents of an apartment complex because a handful of residents are suspected of crimes, it cannot evict all the residents of

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF: 2

*KSB LITIGATION, P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WASHINGTON 99201
PHONE (509) 624-8988

Camp Hope based on suspicion that some of them are criminals. But this guilt by association and general distaste for the residents' impoverished condition appear to be the only bases for Defendants' announced intention to evict, arrest, and seize the property of more than four hundred people.

1.3    Each of the current residents enjoys protection under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, under Art. 1 ¶ 7 of Washington State's Constitution, and under federal laws protecting people with disabilities from discrimination. All of these rights are impaired by Defendants' threatened plan to "sweep" Camp Hope.

1.4    Plaintiffs Christopher Senn, Jason Bewley, and Jared Fullen ("Residents"), each of whom currently reside at Camp Hope, as well as Plaintiffs Jewels Helping Hands and Disability Rights of Washington, have been harmed by the statements and actions of Defendants that interfere with Plaintiffs' efforts to obtain housing and cause the resident Plaintiffs additional trauma. Plaintiffs bring the present action for declaratory and injunctive relief to protect the constitutional and legal rights of themselves and all other residents of Camp Hope and prevent Defendants from further infringing upon these rights and causing profound and irreparable harm.

## II.    **PARTIES**

2.1    Plaintiff Christopher Senn is a 51-year-old man who has resided at Camp Hope for the past 8 months. He served in the United States Army for 15 years before his honorable discharge in 2005. He formerly worked as a painter

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF: 3

*KSB LITIGATION, P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WASHINGTON 99201
PHONE (509) 624-8988

before his car broke down, which made him lose his job and then his housing. He has regained employment as security at Camp Hope and plans to obtain permanent housing in the future. He is personally harmed by Defendants' regular threats that they will forcibly remove him from his current home in the imminent future.

2.2    Plaintiff Jason Bewley is a 43-year-old man who has lived at Camp Hope since June 2022. He is an ordained minister and experiences the significant affects of multiple disabilities, including severe PTSD, deafness in one ear, and spinal conditions. He is working and actively looking for housing; he has recently been approved for a housing voucher. He is personally harmed by Defendants' regular threats that they will forcibly remove him from his current home in the imminent future.

2.3    Plaintiff Jered Fullen is a 41-year-old man who has resided at Camp Hope for several months with his girlfriend. He is working to live with anxiety, substance use disorder, and incarceration, and relies upon the resources at Camp Hope to obtain the care, treatment, and housing that he needs. He is personally harmed by Defendants' regular threats that they will forcibly remove him from his current home in the imminent future.

2.4    Plaintiff Disability Rights Washington (DRW) brings this action as an organizational plaintiff on behalf of its constituents who are people with disabilities residing in Camp Hope. DRW is a nonprofit corporation duly organized under the laws of the State of Washington, is the statewide protection and advocacy system designated by the Governor of the State of Washington to protect

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF: 4

*KSB LITIGATION, P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WASHINGTON 99201
PHONE (509) 624-8988

1   and advocate for the legal and civil rights of those residents of this state who have

2   disabilities, pursuant to the DD Act, 42 U.S.C. §§ 15041-45, the PAIMI Act, 42

3   U.S.C. §§ 10801-51, the PAIR Act, 29 U.S.C. § 794e, the PATBI Act, 42 U.S.C. §

4   300d-53, and RCW 71A.10.080(2). As such, DRW fulfills its federal mandate by

5   providing an array of protection and advocacy services to people with disabilities

6   across Washington, including the constituents in this case. DRW is governed by a

7   board of directors that is a majority people with disabilities and super majority

8   people with disabilities and their family members. This board is advised by two

9   advisory councils, the Disability Advisory Council and the statutorily mandated

10  Mental Health Advisory Council, also primarily comprised of people with

11  disabilities and their family members.

12          2.5     Courts have regularly found that DRW has associational standing to

13  represent the interests of people with disabilities. *Trueblood v. Washington State*

14  *Dep't of Soc. & Health Servs*., 101 F. Supp.3d 1010, 1020 (W.D. Wash. 2015),

15  *modified*, No. C14-1178 MJP, 2016 WL 4533611 (W.D. Wash. 2016), *vacated and*

16  *remanded on other grounds*, 822 F.3d 1037 (9th Cir. 2016) (recognizing DRW's

17  associational standing); *K.M. v. Regence Blueshield*, No. C13-1214 RAJ, 2014 WL

18  801204, at *7 (W.D. Wash. 2014) (holding "DRW has constitutional standing to

19  represent its constituents-individuals with physical, mental and developmental

20  disabilities in Washington State."); *see also Oregon Advocacy Center v. Mink*, 322

21  F.3d 1101, 1109-16 (9th Cir. 2003) (outlining associational standing requirements

22  for a protection and advocacy system). Because DRW's constituency includes

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF: 5

1    unhoused people with physical, sensory, intellectual, and/or mental disabilities, the

2    interests of DRW and the affected individuals in this case are aligned.

3        2.6    Plaintiff Jewels Helping Hands brings this action as an organizational

4    plaintiff on behalf of its constituents, who are people residing in Camp Hope.

5    Jewels Helping Hands is a nonprofit corporation duly organized under the laws of

6    the State of Washington. It advocates for housing solutions for its constituents and

7    has been contracted by the Washington Department of Commerce, via the Empire

8    Health Foundation, to provide myriad services to the residents of Camp Hope.

9    These services include facilitating and/or directly providing two hot meals per day,

10    case management, peer support, a clothing bank and food bank, transportation to

11    and from essential appointments, medical care, sanitation, and classes on obtaining

12    and being successful in permanent housing. Through its Director, Julie Garcia,

13    Jewels Helping Hands has an associational right to protect its constituents and its

14    own interests as a contracted service provider. The interests of Jewels Helping

15    Hands and the affected individuals in this case are aligned.

16        2.7    Defendant City of Spokane is a municipal corporation duly organized

17    and existing under the laws of the State of Washington with the right to sue and be

18    sued in its own name and for the acts and omissions of its agents and employees.

19        2.8    Defendant Spokane County is a municipal corporation duly organized

20    and existing under the laws of the State of Washington with the right to sue and be

21    sued in its own name and for the acts and omissions of its agents and employees.

22

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF: 6

1    2.9    Defendant Ozzie Knezovich is the Spokane County Sheriff. He is

2    sued in in his official capacity only.

3    2.10    Defendant Craig Meidl is the City of Spokane Chief of Police. He is

4    sued in in his official capacity only.

5                    III.    **JURISDICTION AND VENUE**

6    3.1    Plaintiffs bring this action pursuant to 42 U.S.C. §1983 for violations

7    of civil rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to

8    the United States Constitution, and the Americans with Disabilities Act, 42 U.S.C.

9    §12111 *et seq.*

10    3.2    The case presents a federal question within this Court's jurisdiction

11    under Article III, § 2 of the United States Constitution and 28 U.S.C. §§ 1331 and

12    1343. Jurisdiction for supplemental claims arises from 28 U.S.C. § 1367(a).

13    3.3    Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

14    3.4    Venue is appropriate under 28 U.S.C. §1391(b) because the parties

15    reside in this district and the events giving rise to this Complaint occurred in this

16    district.

17                    IV.    **FACTUAL BACKGROUND**

18    A.    **The Genesis and Current Status of Camp Hope**

19    4.1    The City of Spokane, like much of the nation, is experiencing a

20    homelessness crisis, as hundreds of people find themselves involuntarily unhoused

21    and forced to sleep outside in tents, vehicles, and the like. Many of these

22

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF: 7

*KSB LITIGATION, P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WASHINGTON 99201
PHONE (509) 624-8988

individuals have physical and mental disabilities that create additional obstacles to finding and maintaining housing. Communities are thus tasked with the vital task of helping people find the resources they need to obtain housing.

4.2     In Spokane, one such source of assistance is found in an area colloquially referred to as "Camp Hope." This term originally referred to a group of approximately 100 people who, in December of 2021, camped outside of Spokane City Hall to protest the city's lack of shelter space and action for them as people without homes. After less than a week, the City of Spokane issued 48-hour notices to these individuals commanding them to vacate the area or face the loss of belongings and possible arrest. The City's 48-hour notice did not provide any options for housing, emergency shelters, or social and health services.

4.3     On December 16, 2021, in response to the notices from the City, some of the residents of Camp Hope moved from City Hall to vacant land owned by the Washington State Department of Transportation (WSDOT) two blocks west and one block north of I-90 and Freya Street. At this point, the camp comprised approximately 68 individuals, sleeping in tents or vehicles.

4.4     WSDOT issued a notice on January 12, 2022, to vacate the property, but rescinded the notice two days later on January 14, 2022. Since that time, WSDOT has consented to its property being used by residents of Camp Hope. Thus, residents of Camp Hope have resided on the property with the consent of the landowner.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF: 8

*KSB LITIGATION, P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WASHINGTON 99201
PHONE (509) 624-8988

1    4.5    The population at Camp Hope subsequently grew, reaching a high in

2   August 2022 of approximately 623 individuals.

3    4.6    Services have been provided to residents of Camp Hope by Plaintiff

4   Jewels Helping Hands, a nonprofit that provides services such as two hot meals per

5   day, case management, peer support, a clothing bank and food bank, transportation

6   to and from essential appointments, medical care, sanitation, and classes on

7   obtaining and being successful in permanent housing.

8    4.7    Portable toilets and dumpsters have been provided on site, as well as a

9   large tent originally used as a cooling center when summer temperatures exceeded

10  100 degrees, a level recognized as potentially lethal to elderly, ill, or vulnerable

11  humans. This tent continues to be used as a service center for food, clothing, and

12  medical care, and a place for people to get out of the elements. The camp is

13  intended to be short term and temporary.

14   4.8    WSDOT has contracted with the Empire Health Foundation, which

15  has in turn contracted with Jewels Helping Hands, to provide each resident a range

16  of services and assistance in finding housing. In addition to the services already

17  listed, the state has brought representatives from the Departments of Licensing and

18  Health to the Camp to issue resident 150 state ID's (including drivers' licenses)

19  and 45 birth certificates. Such documents are essential for obtaining social

20  services, employment, and housing. This first-of-its-kind effort has only been

21  possible because the residents are in one location, with staff present to assist, and

22  state funding and initiative in establishing an on-site office, something that would

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF: 9

*KSB LITIGATION, P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WASHINGTON 99201
PHONE (509) 624-8988

not happen if the residents were involuntarily scattered throughout the region. *See*
https://www.spokesman.com/stories/2022/oct/27/its-like-you-belong-again-state-agencies-helping-c/

4.9.    As a result of these efforts, the camp's population has fallen from over 600 people to approximately 450, and approximately 250 people who formerly resided at Camp Hope have been able to move to permanent housing, drug treatment, or transitional housing. Efforts are ongoing to obtain housing for all residents, with the intention to close the camp for good as soon as possible. *Id.*

4.10    In mid-October, WSDOT required all residents of the camp to sign "Good Neighbor Agreements" in which they consented to rules of behavior and a curfew. Each resident has been given an ID badge. No one other than badged residents and staff are allowed onto the fenced premises. As of October 28, the census count at Camp Hope was 458 individuals. This population fluctuates but generally decreases as individuals obtain housing.

**B.    Defendants' Efforts and Threats to Displace Camp Hope Residents**

4.11    The City of Spokane and Spokane County do not currently have adequate shelter space to house all residents of Camp Hope. Bed availability fluctuates daily, but is never greater than the unhoused population in the area. While government officials have announced plans and intentions to open additional beds in the future, primarily at a large warehouse congregate facility on Trent Avenue, these beds will still not be enough for all the residents of Camp Hope and will likely be quickly filled by the hundreds of unhoused people in the

*KSB LITIGATION, P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WASHINGTON 99201
PHONE (509) 624-8988

region who do not reside in Camp Hope. The facility will provide up to 150 beds, far fewer than the number of people who reside at Camp Hope. https://www.spokesman.com/stories/2022/sep/08/spokanes-new-homeless-shelter-on-trent-avenue-drew/

4.12   In February, Spokane Police Chief Meidl placed WSDOT on notice that because of alleged elevated crime, waste, noise, and drug use on the property it would, if unabated, be deemed a nuisance and subject to legal action. At that time, there was not adequate shelter space for the residents. Summary disbursal of the camp's residents would have thrust homeless persons back into Spokane's inadequate shelter system or left them to fend for themselves under overpasses, in unused city lots, and away from services at make-shift camps.

4.13   In July of 2022, as temperatures rose above 100 degrees and posed a threat to life, the City of Spokane revoked its permit for Camp Hope's cooling tent and ordered the WSDOT to remove the cooling shelter. WSDOT refused. On information and belief, Spokane police officers also asked neighboring residents who provided water to camp residents to stop doing so.

4.14   On September 9, 2022, the City of Spokane wrote the Washington State Departments of Transportation and Commerce, along with the Washington State Patrol, demanding that the state remove the camp by October 14 or be deemed a "nuisance property" and face legal action. The State Departments responded by letter on September 20, 2022, rejecting the demand and deadline and outlining four steps that allow encampments like Camp Hope to be removed from

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF: 11

*KSB LITIGATION, P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WASHINGTON 99201
PHONE (509) 624-8988

state right of way: 1) the offering of shelter and services to people living there; 2) secure storage of their belongings; 3) safety and security for people on site and work crews; and 4) restoration and cleanup of the property.

4.15   On September 22, 2022, the City of Spokane began issuing code violations to WSDOT, with daily fines, alleging that the service tent and cooling center was against code.

4.16   Also on September 22, Sheriff Ozzie Knezovich held a press conference to announce that he would sweep the camp and arrest those who refuse to leave. This press conference followed a public letter Knezovich wrote to the Washington Secretary of Transportation in which Knezovich stated: "Consider this letter notice to WSDOT that I plan to clear this camp by mid-October, 2022."

4.17   On October 5, 2022, Chief Meidl sent a Chronic Nuisance Notice to WSDOT based on the allegation that some residents of the camp had engaged in illegal activity and there had been an increase in calls for service from residents in the area.

4.18   On October 13, 2022, Meidl gave an interview with KREM 2 news and indicated that he, like Knezovich, intends to "move in and close down" Camp Hope within a month and arrest those who refuse to leave. https://www.youtube.com/watch?v=AsZkdjgpAMU&t=4s

4.19   On October 13, Knezovich said in an interview with The Center Square that he will disband Camp Hope by November 10, 2022. Knezovich was quoted as saying: "I've never said anything I didn't intend to do, so that camp will

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF: 12

KSB LITIGATION, P.S.
510 W. RIVERSIDE AVE., #300
SPOKANE, WASHINGTON 99201
PHONE (509) 624-8988

be vacated. This is the state's mess and I'm going to clean it up." Knezovich also said Spokane Mayor Nadine Woodward and Spokane County Commissioners Mary Kuney, Al French, and Josh Kerns are onboard with his plan, as is Meidl. https://www.thecentersquare.com/washington/spokane-sheriff-chief-discuss-movement-on-camp-hope-disbandment/article_d549ec22-4b4c-11ed-bd0a-5f3ccd86f8ac.html (last visited October 27, 2022).

4.20    On October 24, 2022, the Spokane Board of County Commissioners, at the request of Sheriff Knezovich, issued an emergency proclamation related to Camp Hope. Upon information and belief, one goal of this proclamation is to give the Sheriff authority to forcibly remove Camp Hope.

**C.     People with Disabilities at Camp Hope**

4.21    A very large percentage of Camp Hope residents are people with disabilities. Based on estimates from Jewels Helping Hands, approximately 25% of the camp residents are elderly and many of the elderly are not able to perform activities of daily living without assistance. It is estimated that 6 residents are wheelchair users, and a larger number of people use walkers. Several residents are amputees. These residents are not able to use most temporary shelters because the shelters are not equipped to provide the high level of services needed. These people with disabilities can get needed services and assistance at the camp—from volunteers, service providers, and other residents—that they are not able to obtain anywhere else.

*KSB LITIGATION, P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WASHINGTON 99201
PHONE (509) 624-8988

1    4.22.   A large number of residents have mental disabilities, to include PTSD

2   and related trauma disorders, anxiety, depression, and schizophrenia. Some are

3   prescribed medications for these conditions. These individuals have generally

4   experienced a lessening of symptoms while living in Camp Hope, as they have

5   stability, security, and support systems to treat their medical and mental conditions

6   and assist with housing and employment. They reasonably expect their physical

7   and mental disabilities to be exacerbated if they are forced to abruptly leave Camp

8   Hope, as they would lose these supports.

9    **D.   Ongoing Harm to Camp Hope Residents**

10    4.23   Resident Plaintiffs have directly experienced harm as a result of

11   Defendants' threats to forcibly remove them from their current homes, and have

12   observed the harm to other residents, many of whom are too traumatized to speak

13   publicly.

14    4.24   Defendants' statements have caused significant mental trauma to

15   Plaintiffs and other residents, many of whom have serious mental illness such as

16   PTSD, anxiety, and schizophrenia. These individuals have generally experienced a

17   lessening of symptoms while living in Camp Hope, as they have stability, security,

18   and support systems to treat their medical and mental conditions and assist with

19   housing and employment.

20    4.25   Many residents, particularly female residents, have been frequent

21   victims of physical and sexual assault prior to living in the camp, where they now

22   feel secure. These individuals have experienced severe trauma flashbacks and

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF: 14

1  anxiety at the prospect of being thrust back onto the streets of downtown, where

2  they are at a much high risk of violence.

3    4.26   State officials and others tasked with finding housing for residents of

4  Camp Hope have catalogued the harm already caused by Defendants' threats of

5  police force and purported deadlines. According to Mike Gribner, WSDOT

6  regional administrator, "each time local jurisdictions threaten to sweep the camp, it

7  raises the risk of violence and of campers dispersing to other places where they

8  don't have services. The worst-case scenario is a camper dying after leaving and

9  not receiving the services they need." https://spokesmanreview-wa-

10 app.newsmemory.com/?publink=304c169bc_1348687. (Last visited October 27,

11 2022)

## V.   LEGAL CLAIMS

**VIOLATION OF FOURTH AND FOURTEENTH AMENDMENT RIGHTS AND ARTICLE I, SECTION 7 OF THE WASHINGTON CONSTITUTION**
**42 U.S.C. § 1983**

15

16   5.1   Plaintiffs restate and incorporate by reference the allegations

17 contained in the preceding paragraphs of this Complaint.

18   5.2   The Fourth Amendment to the U.S. Constitution "protects the right of

19 the people to be secure in their persons, houses, papers and effects, against

20 unreasonable seizures and searches." A "seizure" under the Fourth Amendment

21 occurs "where there is some meaningful interference with an individual's

22 possessory interest in that property." *Soldal v. Cook County Ill.*, 506 U.S. 56, 63

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF: 15

*KSB LITIGATION, P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WASHINGTON 99201
PHONE (509) 624-8988

(1992). "A seizure conducted without a warrant is per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." *Miranda v. City of Cornelius*, 429 F.3d 858, 862 (2005). Moreover, "[v]iolation of a City ordinance does not vitiate the Fourth Amendment's protection of one's property." *Lavan v. City of Los Angeles*, 693 F.3d, 1022, 1029 (9th Cir. 2012).

5.3    The Washington State Constitution states this fundamental right even more plainly, stating: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." Wash. Const. Article I, Section 7.

5.4    The Fourteenth Amendment to the United States Constitution and its Washington State equivalent provide that no person shall be deprived of life, liberty, or property without due process of law.  When government action puts an individual's liberty or property interests in jeopardy, the individual is constitutionally entitled to notice and an opportunity to be heard.

5.5    It is the announced policy and clear intention of Defendants to remove all people and property located at Camp Hope through force, in violation of the Fourth and Fourteenth Amendments and the Washington Constitution. Defendants do not have a warrant or probable cause to arrest or detain the vast majority of Camp Hope residents, as they are law abiding citizens residing on land with the consent of the landowner.

5.6    Defendants' announced plan to use an emergency order to seize the property of, and potentially arrest, all persons in the Camp, regardless of whether

there is any particularized suspicion of that person engaging in criminal activity, creates a risk of an abuse of authority amounting to a general warrant. A general warrant—one that "specifie[s] only an offense," leaving "to the discretion of executing officials the decision as to which persons should be arrested and which places should be searched"—is a specific practice intended to be forbidden by the Fourth Amendment. *Steagald v. United States*, 451 U.S. 204, 220 (1981).

5.7    When Defendants take their announced action to remove people and property from Camp Hope, whether pursuant to a finding that it constitutes a nuisance or otherwise, they will put all Camp Hope residents—including those for whom there is no basis to conclude that they have been a nuisance to anyone—at risk of losing their liberty, housing, and all their worldly possessions without authority of law.

5.8    The deprivation of constitutional rights is a foreseeable consequence of Defendants' announced policies and intentions. As a result of the wrongful actions of Defendants, Plaintiffs and others like them have suffered and will continue to sustain impairment of their constitutional rights and damage.

**VIOLATION OF EIGHTH AMENDMENT RIGHTS, 42 U.S.C. § 1983**

5.9    Plaintiffs restate and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

5.10   The Eighth Amendment to the United States Constitution prohibits punishing people for engaging in unavoidable human acts, such as sleeping or resting outside when they have no access to shelter. *Martin v. Boise*, 920 F.3d 584

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF: 17

*KSB LITIGATION, P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WASHINGTON 99201
PHONE (509) 624-8988

(9th Cir. 2019). In *Martin*, the Ninth Circuit held that "so long as there is a greater number of homeless individuals in [a city] than the number of available beds [in shelters]," a city cannot punish homeless individuals for "involuntarily sitting, lying, and sleeping in public." *Id.* at 617. That is, as long as there are insufficient emergency shelter beds available to homeless individuals, "the government cannot criminalize indigent, homeless people for sleeping outdoors, on public property, on the false premise they had a choice in the matter." *Id.* (*quoting Jones v. City of Los Angeles*, 444 F.3d 1118, 1138 (9th Cir. 2006), *vacated on other grounds*, 505 F.3d 1006 (9th Cir. 2007)). As of September, the rule in *Martin* has been extended to a municipality's unlawful *civil* action against homeless people. *See Johnson v. Grants Pass*, 20-35752, 20-35881 (9th Cir. Sep 28, 2022).

5.11    Here, Plaintiffs and the residents of Camp Hope have even more constitutional protection than was found in *Martin* and *Grants Pass,* as they are not sleeping on public sidewalks or parks owned by the City but rather are camped on land owned by WSDOT, with WSDOT's express consent, while WSDOT and private organizations are working towards housing all individuals.

5.12    The City of Spokane and Spokane County have not created enough shelter space to house all Camp Hope residents, let alone the total number of unsheltered homeless people in Spokane County.

5.13    Yet Defendants have chosen, in direct violation of the Eighth Amendment as defined by *Martin* and *Grants Pass,* to announce plans to punish Plaintiffs and all Camp Hope residents for sleeping and resting outdoors when they

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF: 18

*KSB LITIGATION, P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WASHINGTON 99201
PHONE (509) 624-8988

have no access to shelter. Sheriff Knezovich has gone so far as to suggest he may simply give residents bus tickets to go to another city, rather than provide shelter for them in Spokane County.

5.14   Thus, the actions and announced plans of Defendants cause personal injury to and violate the Eighth Amendment rights of Plaintiffs and other residents of Camp Hope.

## VIOLATION OF FIRST AND FIFTH AMENDMENT RIGHTS
## 42 U.S.C. § 1983

5.15   Plaintiffs restate and incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

5.16   The Supreme Court has declared guilt by association "alien to the traditions of a free society and the First Amendment itself." *NAACP v Claiborne Hardware*, 458 US 886, 932 (1982). Numerous Supreme Court decisions have established that imposing guilt by association violates both the Fifth Amendment, which requires that guilt must be personal, and the First Amendment, which guarantees the right of association. These rules stand even when individuals belong to organizations that espouse or engage in illegal acts, as they may only be held responsible for the organization's acts if they acted with specific intent to further the illegal acts. *See, e.g., United States v Robel*, 389 US 258, 262 (1967).

5.17   Here, Defendants have made clear that they hold all residents of Camp Hope responsible for illegal acts committed by any resident, or even non-resident bad-actors in the vicinity, and that they will collectively punish all Camp Hope

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF: 19

*KSB LITIGATION, P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WASHINGTON 99201
PHONE (509) 624-8988

1    residents for the acts of a few individuals by removing them from their home and

2    seizing their property. Sheriff Knezovich extends this vision of group culpability to

3    Jewels Helping Hands when he states publicly that its director has been "holding

4    Spokane hostage" for months.

5         5.18   Defendants have thus made a textbook determination of guilt by

6    association, in violation of the First and Fifth Amendments, and have caused and

7    will continue to cause substantial harm to Plaintiffs and other residents of Camp

8    Hope.

9              **VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**

10        5.19   Plaintiffs restate the preceding paragraphs of this Complaint as if fully

11   rewritten herein.

12        5.20   The City of Spokane and Spokane County are public entities subject

13   to Title II of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C.

14   §§ 12131 *et seq.*

15        5.21   Many residents of Camp Hope are individuals with disabilities who

16   are receiving critical services and accommodations provided exclusively at Camp

17   Hope. Individuals with disabilities are currently being harmed by Defendants' past

18   actions and pronouncements of arbitrary deadlines when they will forcibly remove

19   the camp, as these actions exacerbate PTSD, anxiety and mood disorders, and other

20   mental health disabilities.

21        5.22   Many disabled residents of Camp Hope rely upon publicly-funded

22   services that can meet their needs in integrated community-based settings like

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF: 20

*KSB LITIGATION, P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WASHINGTON 99201
PHONE (509) 624-8988

1    Camp Hope rather than the segregated, institutional settings often favored by

2    governments. However, it takes time to secure the necessary recourses and

3    providers to meeting disability-related needs in a new housing setting. Thus, firm

4    deadlines must be modified to account for the timing necessary to meet those

5    disability-related service delivery needs and avoid unnecessary institutionalization

6    though hasty, forced displacement of existing housing and service.

7         5.23   Defendants' targeting of Camp Home residents, as opposed to those

8    responsible for the public health and public policy failures that led to Camp Hope's

9    creation and continued existence necessarily has a disproportionate impact on

10   disabled people. Furthermore, targeting them instead of the responsible policy

11   makers will lead to people with disabilities being displaced, traumatized, and

12   criminalized disproportionately and in many ways directly because they have

13   disabilities, but it will do nothing to address the true causes of the situation and

14   will not generate solutions to the situation. In short, it merely punishes people with

15   disabilities for simply existing in the system other, non-disabled people in

16   positional power have designed.

17        5.24   People with disabilities currently live at Camp Hope in an integrated

18   community setting of their own choosing, with a neighborhood, social services,

19   neighbors, and friends surrounding them. Removing them from their community

20   and placing them in large institutional settings of others' choosing is

21   discriminatory segregation and a violation of their civil right to live in the most

22   integrated setting. See, e.g., *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999).

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF: 21

*KSB LITIGATION, P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WASHINGTON 99201
PHONE (509) 624-8988

5.25    People with disabilities are at foreseeable risk of acute harm and injury if they were to be suddenly and/or forcibly removed from Camp Hope, as they are at risk of suffering trauma or exacerbating mental health conditions, losing medications, medical devices, and other property necessary to treat their disabilities, losing accommodations to help them participate in and receive the benefit of government programs and services, or exclusion from the community by placement in large institutional settings.

5.26    Through their actions and planned actions, Defendants have discriminated and will continue to discriminate against individuals with disabilities in violation of Title II of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12132 *et seq*., and its implementing regulations, 28 C.F.R. pt. 35. 198.

5.27    By the actions set forth above, Defendants have violated the ADA, 42 U.S.C. § 12131 *et seq*., by, among other things:

a. Denying qualified individuals with disabilities the benefit of its programs, services, or activities, 28 C.F.R. § 35.130(a);

b. Denying qualified individuals with disabilities an equal opportunity to participate in or benefit from its programs, services, or activities, 28 C.F.R. § 35.130(b)(1)(ii);

c. Utilizing criteria or methods of administration that have the effect of discrimination against qualified individuals with disabilities or that have the purpose or effect of defeating or substantially impairing accomplishment

*KSB LITIGATION, P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WASHINGTON 99201
PHONE (509) 624-8988

1    of the objectives of the City's program with respect to individuals with

2    disabilities, 28 C.F.R. § 35.130(b)(3)(i), (ii), (8);

3        d. Failing to make reasonable modifications in policies, practices, or

4    procedures when the modifications are necessary to avoid discrimination on

5    the basis of disability; 28 C.F.R. § 35.130(b)(7)(i);

6        e. Failing to administer services, programs, and activities in the most

7    integrated setting appropriate to the needs of qualified individuals with

8    disabilities. 28 C.F.R. § 35.130 (d); and

9        f. Excluding or otherwise denying equal services, programs, or

10    activities to an individual because of their relationship or association with a

11    person with a disability, 28 C.F.R. § 35.130(g).

12      5.28    Defendants' discriminatory conduct as described above has caused

13    injury to individuals with disabilities and others associated with them, and to

14    Plaintiff Disability Rights Washington, as detailed above.

15      5.29   Defendants' conduct described above was intentional, willful,

16    reckless, deliberately indifferent to, and/or otherwise taken with disregard for the

17    rights of individuals with disabilities and those associated with them.

18                **VI. ENTITLEMENT TO DECLARATORY RELIEF**

19      6.1    Plaintiffs incorporate all preceding paragraphs as if fully set forth

20    herein.

21      6.2    For reasons including but not limited to those stated herein, an actual

22    dispute exists between Plaintiffs and Defendants, which parties have genuine and

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF: 23

1  opposing interests, which interests are direct and substantial, and of which a

2  judicial determination will be final and conclusive.

3      6.3   Plaintiffs are, therefore, entitled to a declaratory judgment that the

4  wholesale removal of individuals from Camp Hope is unconstitutional and illegal,

5  as well as such other and further relief as may follow from the entry of such a

6  declaratory judgment.

7  ## VII.  **PRAYER FOR RELIEF**

8      WHEREFORE, Plaintiffs respectfully prays that this Court:

9      (a)   Enter a declaratory judgment that Defendants' announced plans to

10  remove all people and property from Camp Hope violate Plaintiffs' rights under

11  the United States Constitution and the Americans with Disabilities Act;

12      (b)   Enter a declaratory judgment that Plaintiffs and other current residents

13  of Camp Hope are legally entitled to reside at this location so long as they have the

14  consent and permission of the property owner, WSDOT;

15      (c)   Issue a permanent injunction restraining Defendants from arresting

16  and removing residents of Camp Hope from their current location without specific

17  and individualized probable cause to arrest a person for a criminal offense

18  unrelated to an order given by Defendants to disband, move, or otherwise leave

19  Camp Hope;

20      (d)   Award to Plaintiffs their expenses, costs, fees, and other

21  disbursements associated with the filing and maintenance of this action, including

22  reasonable attorneys' fees under 42 U.S.C. § 1988 or other applicable law;

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF: 24

*KSB LITIGATION, P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WASHINGTON 99201
PHONE (509) 624-8988

1       (d)    Exercise continuing jurisdiction during the enforcement of its

2  judgment;

3       (e)    Award such other and further relief as may follow from the entry of a

4  declaratory judgment; and

5       (f)    Award any further relief the Court deems just or equitable.

DATED this 28th day of October, 2022.

_____
JEFFRY K. FINER, WSBA NO. 14610
**KSB LITIGATION, P.S.**
Asst: (509) 666-2835 • Cell: (509) 981-8960
jfiner@KSBlit.legal

**LAW OFFICE OF ANDREW S. BIVIANO, PLLC**
Andrew S. Biviano, WSBA #38086
25 West Main Avenue, Suite 218
Spokane, WA  99201 (509) 209-2630
Email: andrewbiviano@me.com

**DISABILITY RIGHTS WASHINGTON**
David R. Carlson, WSBA # 35767
901 N. Monroe, Suite 340
Spokane, WA 9921 (206) 324-1521
Email: davidc@dr-wa.org
*Attorneys for Plaintiffs*

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF: 25