KSB Litigation, P.S.
Jeffry K. Finer, WSBA # 14610
510 West Riverside, 3rd Floor
Spokane, WA 99201 509 981-8960
Email: jfiner@ksblit.legal

Law Office of Andrew S. Biviano, PLLC
Andrew S. Biviano, WSBA #38086
25 West Main Avenue, Suite 218
Spokane, WA  99201 (509) 209-2630
Email: andrewbiviano@me.com

Disability Rights Washington
David R. Carlson, WSBA # 35767
901 N. Monroe, Suite 340
Spokane, WA 9921 (206) 324-1521
Email: davidc@dr-wa.org

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHRISTOPHER SENN; JASON BEWLEY; JERED FULLEN, DISABILITY RIGHTS WASHINGTON, and JEWELS HELPING HANDS, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF SPOKANE, a municipal corporation; SPOKANE COUNTY, a municipal corporation; OZZIE KNEZOVICH, in his official capacity as Spokane County Sheriff; CRAIG MEIDL, in his official capacity as Spokane Police Chief; <br> Defendants. | NO.  2:22-cv-254-SAB <br><br> PLAINTIFFS' AMENDED MOTION FOR PRELIMINARY DECLARATORY AND INJUNCTIVE RELIEF |

PLAINTIFFS' AMENDED MOTION FOR
PRELIMINARY DECLARATORY AND INJUNCTIVE
RELIEF: 1

1

## I.    INTRODUCTION

2

3    Plaintiffs wish to close Camp Hope humanely, safely, and legally, which

4 takes time. Defendants are seeking to avoid the legal requirements imposed by

5 current Circuit caselaw and intend to close Camp Hope regardless of safety or

6 humane considerations, and prior to the Court having an opportunity to rule.

7    The protections of the United States Constitution apply to all people,

8 including the unsheltered homeless who are forced to live in places that

9 government officials deem undesirable. Indeed, constitutional protections are

10 especially important for the most vulnerable, as these protections often provide the

11 last bulwark against mistreatment based solely on social status. This case seeks to

12 ensure that hundreds of Spokane residents who are struggling to find housing, and

13 hope, do not lose their fundamental rights and dignity due to political opportunism.

14    Residing in Camp Hope, under an agreement between the landowner and

15 local service providers pursuant to the State's Right of Way Initiative, is neither a

16 crime nor a public nuisance. While some individuals who reside in this location

17 may commit criminal offenses and be subject to arrest and prosecution for these

18 offenses, our Constitution forbids guilt by association and collective punishment of

19 an entire group based on the acts of a few members. Yet this is essentially what

20 Defendants in this action intend to do..

21    Since filing this suit, Plaintiffs have engaged with counsel for Defendants to

22 reach an agreement to delay forcible removal until the Spokane community has

PLAINTIFFS' AMENDED MOTION FOR
PRELIMINARY DECLARATORY AND INJUNCTIVE
RELIEF: 2

1    adequate alternative housing, as required under Ninth Circuit caselaw. These

2    attempts at resolution have not resulted in progress and in fact have led to further

3    constitutional violations. After this action was filed, Defendants Knezovich and

4    Spokane County have initiated searches of the homes of Plaintiffs and other Camp

5    Hope residents by flying helicopters low over Camp Hope and surveilling residents

6    inside their homes using advanced infrared imaging. ECF No. 14. These searches

7    were done without a judicial warrant or lawful authority and were done in apparent

8    retaliation for Plaintiffs filing the present lawsuit and for other actions taken to

9    petition their city and county governments for redress of grievances.

10    Then, on December 6th, 2022, dozens of uniformed officers from the City

11    and County of Spokane along with Spokane Valley law enforcement arrived at

12    Camp Hope without notice and handed out leaflets warning residents that the

13    Camp will be closed. https://www.spokesman.com/stories/2022/dec/06/this-camp-

14    is-to-be-closed-confusion-frustration-af/. Defendants are intentionally withholding

15    from residents and the public the date on which they plan to conduct this unlawful

16    sweep, meaning it could happen at any moment. *Id*. This sweep is planned despite

17    hard objective evidence that Spokane presently cannot provide safe or adequate

18    housing for its homeless, not even for the small subset of homeless who reside at

19    Camp Hope. *Id.*

20    Plaintiffs therefore have no choice but to seek preliminary declaratory and

21    injunctive relief, enjoining Defendants from clearing all residents from Camp Hope

22    and from continuing to conduct helicopter overflights and infrared imaging

PLAINTIFFS' AMENDED MOTION FOR
PRELIMINARY DECLARATORY AND INJUNCTIVE
RELIEF: 3

*KSB LITIGATION, P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WASHINGTON 99201
PHONE (509) 624-8988

searches. Absent Court intervention, the City and County will continue to violate the constitutional rights of homeless people, particularly those with disabilities. Plaintiffs easily satisfy the standard for a preliminary injunction. Plaintiffs have sufficiently demonstrated a likelihood of success on the merits of their constitutional and legal claims. Plaintiffs will be irreparably harmed by the planned actions of Defendants. And given the constitutional issues at stake, the balance of the equities and public interest are best served by a preliminary injunction preventing the City from doing grave harm to an incredibly vulnerable population.

## II.    STATEMENT OF FACTS

Plaintiffs Bewley, Fullen, and Senn live at Camp Hope alongside other residents who are constituents of organizational Plaintiffs Jewels Helping Hands and Disability Rights Washington. Declarations of Bewley; Fullen; Senn; and Garcia.  All reside here with the permission of the landowner, Washington State Department of Transportation. Decl. Garcia ¶ 24. At Camp Hope, residents get the supports they need such as food (Decl. Bewley ¶ 6), shelter (Decls. Bewley ¶ 6; Fullen ¶ 2; Senn ¶ 5), employment (Decls. Bewley ¶ 9; Fullen ¶ 2; Senn ¶ 4), healthcare (Decls, Fullen ¶ 3; Senn ¶ 6), privacy (Decls. Fullen ¶ 4; Senn ¶¶ 5,7), stability (Decls. Bewley ¶ 6; Fullen ¶ 4; Senn ¶¶ 5-6), and a community of support (Decls. Fullen ¶¶ 2,4; Senn ¶¶ 6-7). Defendants vow to take all of this away by arresting everyone who refuses to leave Camp Hope when Defendants arrive with their armed law enforcement officers. *See, e.g.* ECF No 14 ¶¶ 4.16-4.20; Decl. Garcia ¶¶ 13-15. This has led to a great amount of fear in the homeless community.

PLAINTIFFS' AMENDED MOTION FOR
PRELIMINARY DECLARATORY AND INJUNCTIVE
RELIEF: 4

*KSB LITIGATION, P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WASHINGTON 99201
PHONE (509) 624-8988

Decl Garcia ¶ 16. The alternatives of solo camping and congregate shelters deprive all residents the benefit of the fundamental human needs they are currently getting met at Camp Hope and are looking to get met in more stable housing settings. *See, e.g.* Decls. Fullen ¶ 4; Senn ¶¶ 5-7, Garcia ¶¶ 19-22.

If Defendants sweep the camp and force people to leave Camp Hope before they find stable housing, people with disabilities will be especially harmed due to their disabilities. One example is "S.H.," who is 65, uses a wheelchair, and is unable to use the left side of her body due to a stroke, Decl. Garcia ¶ 20. If forced to abruptly leave Camp Hope, S.H. will either have to sleep on her own in the streets or go to jail because no shelter will accept S.H. and provide her with the level of assistance in hygiene and personal care tasks she currently receives at Camp Hope. *Id.* Similarly, "L Senior" and "L Junior" would have to choose between living alone on the streets or in jail, because a shelter would not take and is not a good fit for L Junior's schizophrenia-related needs for monitoring, redirection, and space from others—needs that his father, who promised L Junior's mother that he would look after their son following her death earlier this year, are able to get met at Camp Hope. *Id.* ¶ 21.

Another example is C.J., a 68-year-old who uses a walker because she lost her ability to independently use her left leg, and is cared for by her adult son. *Id.* ¶ 22. C.J. and her son are limited in which shelters they could even consider, as most are limited to only one gender. *Id.* ¶ 5. Moreover, C.J. and her son would likely not

PLAINTIFFS' AMENDED MOTION FOR
PRELIMINARY DECLARATORY AND INJUNCTIVE
RELIEF: 5

*KSB LITIGATION, P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WASHINGTON 99201
PHONE (509) 624-8988

be able to access any shelter because of her support needs stemming from the loss of control of her left leg. *Id.* ¶ 22.

An estimated 15% of the residents have disabilities and face the same problem with shelter inaccessibility even if they wanted to select that option. *Id.* ¶ 23. Barred from residing in any of the shelters, they will be forced onto the street or into institutions instead of living in the community as they prefer. *Id.* Many will be at risk of serious injury or death if forced to live on the streets. *Id.*

Beyond the fact that shelters do meet many of the needs Camp Hope is currently meeting for all residents, and the additional needs of disabled residents that cannot be met in shelters, there simply are not enough beds within the shelter system. The entire number of available beds (or mats as the case may be) has never exceeded the number of residents at Camp Hope, nor has it exceeded the number of homeless individuals based on the City's official "point in time" census. *Id.* ¶ 6.

After the filing of the present lawsuit, the Sheriff's Department staged helicopter flyovers at the Camp for the next three consecutive nights, circling for 15-20 minutes each time, using a spotlight to illuminate the site's tents and grounds. ECF No. 14, ¶¶ 4.35-37. The helicopter was low enough that campers at the site could feel roto backwash and the noise level from the helicopter was louder than any traffic from the adjacent streets. *Id.* The third night the helicopter appeared to be using infrared scanning to see into tents, RVs, and the other temporary shelters. *Id.* On November 22, 2022, Defendant Knezovich held a press

PLAINTIFFS' AMENDED MOTION FOR
PRELIMINARY DECLARATORY AND INJUNCTIVE
RELIEF: 6

*KSB LITIGATION, P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WASHINGTON 99201
PHONE (509) 624-8988

conference along with Spokane Mayor Woodward and Spokane County

Commissioner Kuney, in which he acknowledged that the Sheriff's Office had

conducted these helicopter overflights to observe the camp, that they had used

infrared imaging, and that his office did not first obtain a warrant. See

https://www.youtube.com/watch?v=Ak3h6Tl160s. (Last visited November 27,

2022) at 22:30-58; 32:45-57. Knezovich also referred to the encampment as an

"act of protest" and "unlawful assembly" and repeated his threat that "soon, we

will be posting that camp with a notice that it's gonna be closed." *Id.* 27:45-28:00;

29:40-56."

On December 6, more than a dozen uniformed officers from the Spokane

County Sheriff's Office, as well as the Spokane and Spokane Valley police

departments, arrived in force at Camp Hope to deliver flyers to residents stating:

"This Camp is to be closed."https://www.spokesman.com/stories/2022/dec/06/this-

camp-is-to-be-closed-confusion-frustration-af/. The flyers and public statements

made by Defendants do not provide residents of Camp Hope with a specific date

on which Defendants intend to forcibly remove the residents from their current

homes. *Id.* Mark Gregory, public information officer for the Spokane Sheriff's

Office, explained that this was an intentional decision, stating to the media: "We're

never going to say when we're going to – if we had to – go down and close the

camp, because that wouldn't be smart of us to do." *Id.* Mr. Gregory continued:

"The camp is going to be closed, but we want to do it without ever using law

PLAINTIFFS' AMENDED MOTION FOR
PRELIMINARY DECLARATORY AND INJUNCTIVE
RELIEF: 7

*KSB LITIGATION, P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WASHINGTON 99201
PHONE (509) 624-8988

1    enforcement to move people out of the camp . . . (A sweep) is not our goal, but if

2    we have to, we will do that." *Id.*

3        Plaintiffs and other residents at Camp Hope thus face imminent and

4    irreparable harm from a planned law enforcement sweep, with no alternative place

5    to go, and without consideration of the needs of people with disabilities.

6                        **III.    LEGAL ANALYSIS**

7        A plaintiff seeking preliminary relief under Federal Rule of Civil Procedure

8    65 must establish "that he is likely to succeed on the merits, that he is likely to

9    suffer irreparable harm in the absence of preliminary relief, that the balance of

10    equities tips in his favor, and that an injunction is in the public interest." *Winter v.*

11    *Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  The Ninth Circuit applies a

12    "sliding scale" approach to balancing these elements; "a stronger showing of one

13    element may offset a weaker showing of another." *All. for the Wild Rockies v.*

14    *Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).  Thus, when the likelihood of grave

15    irreparable injury is palpable and the balance of equities tips sharply in plaintiffs'

16    favor, the plaintiffs need only "demonstrate a fair chance of success on the merits

17    or questions serious enough to require litigation." *Arc of Cal. v. Douglas*, 757 F.3d

18    975, 993-94 (9th Cir. 2014) (internal quotations and citation omitted).  All of the

19    *Winter* factors weigh in favor of an injunction here.

20    **A. Plaintiffs are likely to succeed on the merits of their claims.**

21        To show a likelihood of success on the merits, the moving party need not

22    demonstrate that they will prevail, but only that it is "more likely than not" that

PLAINTIFFS' AMENDED MOTION FOR
PRELIMINARY DECLARATORY AND INJUNCTIVE
RELIEF: 8

*KSB LITIGATION, P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WASHINGTON 99201
PHONE (509) 624-8988

they will. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *Leiva–Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011). Further, Plaintiffs must show likelihood of success on the merits of only one of their claims. *Rodde v. Bonta*, 357 F.3d 988, 998 n.13 (9th Cir. 2004). Plaintiffs are more likely than not to succeed on each of their claims.

### 1.    Plaintiffs are likely to succeed on their claims under the Fourth and Fourteenth Amendment to the U.S. Constitution and under Article 1, Section 7 of the Washington State Constitution.

Plaintiffs' rights to be free from unwarranted governmental invasion of their liberty and property are clearly established and should be beyond dispute.

The Fourth Amendment to the U.S. Constitution "protects the right of the people to be secure in their persons, houses, papers and effects, against unreasonable seizures and searches." U.S. Const. Amend. IV. "A seizure conducted without a warrant is per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." *Miranda v. City of Cornelius*, 429 F.3d 858, 862 (2005).

The Washington State Constitution protects this fundamental right even more plainly, stating: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." Wash. Const. Article I, Section 7.

The Due Process Clause of the Fourteenth Amendment prevents the state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV.  Where an individual is deprived of a property

PLAINTIFFS' AMENDED MOTION FOR
PRELIMINARY DECLARATORY AND INJUNCTIVE
RELIEF: 9

*KSB LITIGATION, P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WASHINGTON 99201
PHONE (509) 624-8988

1    interest, the Supreme Court has long held that the gravity of a deprivation is

2    irrelevant to the question of whether account must be taken of the Due Process

3    Clause. *See Goss v. Lopez*, 419 U.S. 565, 579 (1975). "[T]o put it as plainly as

4    possible, the State may not finally destroy a property interest without first giving

5    the putative owner an opportunity to present his claim of entitlement." *Logan v.*

6    *Zimmerman Brush Co*., 455 U.S. 422, 433 (1982).

7         Here, Defendants have announced their intentions to deprive all residents of

8    Camp Hope of their liberty and property without the authority of law. The

9    residents of Camp Hope are not committing a crime simply by being present on

10   state-owned property with the support of the State pursuant to the Right of Way

11   Initiative. They do not create a public nuisance simply by living their lives in the

12   small space assigned to them, even if a neighboring resident engages in

13   misconduct. Defendants thus have no legal authority to disturb all residents of

14   Camp Hope in their personal affairs or seize any property by sweeping the camp.

15        It is not surprising, or even unreasonable, for the Camp's neighbors,

16   community members, and political leaders to be frustrated when a group of

17   unhoused individuals moves into an area knowing that some have committed crime

18   and disturbed the peace. The instinct to respond by forcibly removing or

19   ostracizing the perceived problem group is common and historically human. But

20   acting on this instinct is forbidden by our Constitution, as articulated by the

21   Supreme Court:

22

PLAINTIFFS' AMENDED MOTION FOR
PRELIMINARY DECLARATORY AND INJUNCTIVE
RELIEF: 10

> May the State fence in the harmless mentally ill solely to save its citizens from exposure to those whose ways are different? One might as well ask if the State, to avoid public unease, could incarcerate all who are physically unattractive or socially eccentric. Mere public intolerance or animosity cannot constitutionally justify the deprivation of a person's physical liberty.

*O'Connor v. Donaldson*, 422 U.S. 563, 575–76 (1975)

Plaintiffs are also likely to prevail on their claims related to the Sheriff's use of helicopter overflights and infrared searches of the homes of Plaintiffs and other residents. It is well established that infrared searches of homes require a warrant under both the Fourth Amendment and Article 1, Section 7 of the Washington Constitution. *Kyllo v U.S.*, 533 U.S. 27 (2001) (The government's use of a thermal imaging device to explore details of the home that would previously have been unknowable without physical intrusion is a "search" and is presumptively unreasonable without a warrant); *State v. Young*, 123 Wn.2d 173, 184 (1994) ("The use of the thermal detection device to perform a warrantless, infrared surveillance violated the Washington State Constitution's protection of the defendant's private affairs."). One does not need to have a traditional home to have this privacy right against intrusive searches of their living spaces. *State v. Pippin*, 200 Wash.App. 826 (2017) (holding that law enforcement's actions in lifting the tarp of an unhoused person's lean-to shelter violated Article 1, Section 7 of the Washington Constitution). Here, the Sheriff has acknowledged that he his office has used infrared technology that allows him to look inside of private living spaces and did not have a warrant to do so. Plaintiffs are likely to prevail on this claim.

PLAINTIFFS' AMENDED MOTION FOR
PRELIMINARY DECLARATORY AND INJUNCTIVE
RELIEF: 11

*KSB LITIGATION, P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WASHINGTON 99201
PHONE (509) 624-8988

Worse, the Sheriff and other Defendants continue to express their intentions to engage in unconstitutional conduct in the future, to include the sweep and closure of Camp Hope and conduct more unlawful searches. Plaintiffs are likely to prevail on their claims under the Fourth and Fourteenth Amendment to the U.S. Constitution and under Article 1, Section 7 of the Washington State Constitution and need preliminary injunctive relief to prevent ongoing harm.

### 2.    Plaintiffs are likely to succeed on their claims under the Eighth Amendment to the U.S. Constitution.

The Ninth Circuit has recently issued two rulings prohibiting municipalities from arresting or otherwise punishing people for sleeping outside when they have no access to shelter, pursuant to the Eighth Amendment's prohibition on cruel and unusual punishment. In *Martin v. Boise*, 920 F.3d 584 (9th Cir. 2019), the court held that "so long as there is a greater number of homeless individuals in [a city] than the number of available beds [in shelters]," a city cannot punish homeless individuals for "involuntarily sitting, lying, and sleeping in public." *Id.* at 617. That is, as long as there are insufficient emergency shelter beds available to homeless individuals, "the government cannot criminalize indigent, homeless people for sleeping outdoors, on public property, on the false premise they had a choice in the matter." *Id.* (*quoting Jones v. City of Los Angeles*, 444 F.3d 1118, 1138 (9th Cir. 2006), *vacated on other grounds*, 505 F.3d 1006 (9th Cir. 2007)).

Recently, the Ninth Circuit extended the rule in *Martin* to prohibit a municipality's issuance of infractions against homeless people where civil and

PLAINTIFFS' AMENDED MOTION FOR
PRELIMINARY DECLARATORY AND INJUNCTIVE
RELIEF: 12

criminal punishments are closely intertwined and held that class certification can
be appropriate in cases such as this. *See Johnson v. Grants Pass*, 20-35752, 20-
35881, at *48 (9th Cir. Sep 28, 2022).

Here, Plaintiffs and the residents of Camp Hope have even more
constitutional protection than was found in *Martin* and *Grants Pass,* as they are not
sleeping on public sidewalks or parks owned by the City but rather are camped on
land owned by WSDOT, with WSDOT's support under the Right of Way
Initiative, while WSDOT and private organizations work toward housing all
individuals. In contrast to *Martin* and *Grants Pass,* there exist no statutes or
ordinances giving Defendants authority to cite, charge, or arrest anyone for living
at Camp Hope. Defendants make up for this lack of authority by provocative
infrared overflights, unannounced armed delivery of notices of eviction — without
any stated deadline or hearing opportunity — actions that impact the stability and
peace of the residents legally and temporarily living at the Camp.

### 3.    Plaintiffs are likely to succeed on their claims under the First and Fifth Amendments to the U.S. Constitution

The Supreme Court has declared guilt by association "alien to the traditions
of a free society and the First Amendment itself." *NAACP v Claiborne Hardware*,
458 US 886, 932 (1982). Numerous Supreme Court decisions have established that
imposing guilt by association violates both the Fifth Amendment, which requires
that guilt must be personal, and the First Amendment, which guarantees the right

PLAINTIFFS' AMENDED MOTION FOR
PRELIMINARY DECLARATORY AND INJUNCTIVE
RELIEF: 13

*KSB LITIGATION, P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WASHINGTON 99201
PHONE (509) 624-8988

1    of association. These rules stand even when individuals belong to organizations

2    that espouse or engage in illegal acts, as they may only be held responsible for the

3    organization's acts if they acted with specific intent to further the illegal acts. *See,*

4    *e.g., United States v Robel*, 389 US 258, 262 (1967).

5         In this case, the public comments made by Defendants make plain that the

6    primary reason they feel authorized to clear out all residents from Camp Hope is

7    that the camp has brought increased crime to the area. There is no evidence,

8    however, that named Plaintiffs or the majority of other residents have engaged in

9    any criminal activity whatever. There is thus no basis for them to be punished or

10   suffer adverse consequences for the increased crime rates, unless they are assessed

11   guilt based on their association with (or, more accurately, proximity to) other

12   residents who may have committed crimes. This is expressly prohibited under the

13   First and Fifth Amendments.

14        Defendant Knezovich has also recently expressed that he views Camp Hope

15   itself to be an "an act of protest, and sooner or later it becomes an unlawful

16   assembly." ECF No 14 ¶ 4.39. Defendant Knezovich thus frankly admitted that he

17   views Camp Hope as a form of protest, which implicitly means that those at Camp

18   Hope are engaged in protected speech. That he intends to stifle this protected

19   speech through the removal of all residents makes Plaintiffs very likely to prevail

20   on this First Amendment claim.

21        It should be noted that Defendants have ample tools at their disposal to

22   counter and prevent crime in the area. They are fully capable and authorized to

PLAINTIFFS' AMENDED MOTION FOR
PRELIMINARY DECLARATORY AND INJUNCTIVE
RELIEF: 14

*KSB LITIGATION, P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WASHINGTON 99201
PHONE (509) 624-8988

investigate and arrest individuals based on probable cause and can enter the camp to do so.[1] But probable cause must be individualized. Evidence that one or more individuals residing at Camp Hope have committed crimes does not provide probable cause to remove or arrest all the people who live in Camp Hope. But this guilt by association and general distaste for the residents' impoverished condition appear to be the only bases for Defendants' announced intention to evict, arrest, and seize the property of more than four hundred people.

### 4.    Plaintiffs are likely to succeed on their claims under the ADA.

There is little question that a sweep of Camp Hope would have disproportionate effects on people with disabilities and would violate Defendants' obligations under the ADA. Many residents of Camp Hope are individuals with disabilities who are receiving critical services and accommodations provided exclusively at Camp Hope. Decl. Garcia ¶¶ 19-23. Their sudden eviction from Camp Hope, with no alternative services in place, would leave them with services and accommodations and in great danger of significant harm or death. *Id.* This constitutes discrimination on the basis of disability as well as a failure to accommodate, in violation of the ADA.

Moreover, the actions proposed by Defendants would violate the integration mandate set forth in *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999). People

---

[1] The Spokane Police Department has made the discretionary choice to not enforce the law within Camp Hope, leaving the residents to fend for themselves without police services or assistance. Decl Garcia ¶¶ 25-27.

PLAINTIFFS' AMENDED MOTION FOR
PRELIMINARY DECLARATORY AND INJUNCTIVE
RELIEF: 15

1    with disabilities currently live at Camp Hope in an integrated community setting of

2    their own choosing, with a neighborhood, social services, neighbors, and friends

3    surrounding them. Defendants' planned action would likely result in them ending

4    up in jails, hospitals or institutions, or on the streets. Decl Garcia ¶¶ 19-23.

5    Removing people with disabilities from their community and placing them in large

6    institutional settings of others' choosing is discriminatory segregation and a

7    violation of their civil right to live in the most integrated community setting.  It is

8    thus likely that Plaintiffs would prevail on this claim.

9        **B. Plaintiffs Will Suffer Irreparable Harm Absent Injunctive Relief.**

10       Absent the Court's intervention to enjoin Defendants' plan to clear Camp

11   Hope, the Named Plaintiffs and all other residents of Camp Hope will suffer

12   irreparable harm. "It is well established that the deprivation of constitutional rights

13   'unquestionably constitutes irreparable injury.' *Melendres v.Arpaio*, 695 F.3d 990,

14   1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see also*

15   *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013).

16       The Named Plaintiffs in this case have already been subjected to harm

17   resulting from Defendants' repeated threats of arbitrary deadlines by which they

18   must vacate their current home or face arbitrary arrest and seizure of their property.

19   Decl. Garcia ¶¶ 16-17. This harm is undoubtedly made even worse by mental

20   health conditions such as PTSD and anxiety, which are exacerbated by the stress,

21   uncertainty, and instability caused by Defendants' pronouncements. Indeed, this

22

PLAINTIFFS' AMENDED MOTION FOR
PRELIMINARY DECLARATORY AND INJUNCTIVE
RELIEF: 16

stress and instability may be the motivating factor behind Defendants' threats, driven by the intent to coerce Plaintiffs from leaving Camp Hope. This harm will only worsen if more threats are made, thus making essential the requested declaratory and injunctive relief.

The harm that has already been done would be exponentially compounded, and would be irreparable, if an injunction is not entered and Defendants are allowed to follow through on their plans to sweep Camp Hope and continue to conduct unconstitutional searches. This would result in the deprivation of constitutional rights, possible arrest, the loss of belongings, and the loss of critical services offered at Camp Hope that are critical to residents with disabilities. Given that Defendants have now indicated in writing that the camp will be soon closed, without giving a date, makes "the threat of irreparable harm . . . sufficiently immediate to warrant preliminary injunctive relief." *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1023 (9th Cir. 2016) (quoting *Winter*, 555 U.S. at 22).

Disability Rights Washington and Jewels Helping Hands will also suffer irreparable injury if an injunction is not issued. The Ninth Circuit has recognized that an organizational plaintiff's suffering "ongoing harms to [its] organizational missions" can constitute irreparable harm. *Valle del Sol Inc v. Whiting,* 732 F.3d 1006, 1029 (9th Cir. 2013).

Finally, emotional and psychological harm arising from a violation of disability rights law meets the irreparable injury requirement in the context of a preliminary injunction. *Chalk v. Orange Cty. Superintendent of Schs.*, 840 F.2d

PLAINTIFFS' AMENDED MOTION FOR
PRELIMINARY DECLARATORY AND INJUNCTIVE
RELIEF: 17

*KSB LITIGATION, P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WASHINGTON 99201
PHONE (509) 624-8988

701, 710 (9th Cir. 1988). Without injunctive relief, Plaintiffs and other residents with disabilities face the constant possibility that they will be forced out of the camp and onto the street without necessary treatment and accommodations, or into institutions that deprive them of community integration, and will continue to suffer the psychological and emotional harm and loss of rights caused by helicopter overflights and infrared searches.

### C. The Balance of Equities Favors and Public Interest Weigh Heavily in Plaintiffs' Favor.

The third and fourth factors concern the equitable interests at stake in granting an injunction: whether the equities favor an injunction, and the impact on the public interest. *Winter*, 555 U.S. at 20. The fourth factor primarily considers the injunction's impact on non-parties. *League of Wilderness Defenders*, 752 F.3d at 766. This includes, for example, non-parties whose rights would otherwise be subjected to an unconstitutional statute. *See Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009). Where the government is a party to the litigation and opposes an injunction, the third and fourth Winter factors merge. *See Drakes Bay Oyster Co. v. Jewell*, 747 F3d 1073, 1092 (9th Cir. 2014). And where, as here, Plaintiffs have shown a strong likelihood of success on the merits and irreparable harm, "the balance of equities and public interest tip in favor of Plaintiffs." *Los Padres Forestwatch v. U.S. Forest Service*, 776 F.Supp.2d 1042, 1052 (N.D. Cal. 2011). But even without such a strong showing on the first two factors, Plaintiffs can easily show the third and fourth factors weigh in favor of an injunction.

First, "the protection of constitutional rights is a strong equitable argument in favor of issuing the injunction." *Lavan*, 797 F. Supp. 2d at 1019-20 (granting an injunction against the City of Los Angeles, preventing it from seizing and immediately destroying property in Skid Row). Defendants are bound by the United States and Washington constitutions. Courts have consistently held that the public interest is best served by enjoining unconstitutional or unlawful laws and conduct, stating: "It is always in the public's interest to enjoin actions that violate an individual's constitutional rights, all the more so when this is being done in the name of their own government." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (upholding a preliminary injunction against a policy of racial profiling); *see also Awad v. Ziriax,* 670 F.3d 1111, 1131-1132 (10th Cir. 2012); *Diamond House of SE Idaho, LLC v. City of Ammon*, 381 F.Supp.3d 1262, 1279 (D.Idaho, 2019) (holding that the public interest is served by enjoining the implementation of an ordinance that the court found was facially invalid under the Fair Housing Act, because the FHA serves an important public interest).

Second, granting an injunction in this case will protect not just the constitutional rights of named Plaintiffs but also the rights of the hundreds of people who are compelled to live in Camp Hope. As in other cases where courts have granted injunctions against facially invalid ordinances or conduct, "the ongoing enforcement of the potentially unconstitutional regulations ... would infringe not only the [constitutional rights] of [plaintiffs], but also the interests of other people" subjected to the same restrictions. *Klein v. City of San Clemente*, 584

PLAINTIFFS' AMENDED MOTION FOR
PRELIMINARY DECLARATORY AND INJUNCTIVE
RELIEF: 19

*KSB LITIGATION, P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WASHINGTON 99201
PHONE (509) 624-8988

1    F.3d 1196, 1208 (9th Cir. 2009). Enjoining Defendants from clearing Camp Hope

2    would stop those violations, which weighs heavily in favor of finding that the

3    injunction serves the public interest.

4              **IV. THE BOND REQUIREMENT SHOULD BE WAIVED**

5        Where, as here, there is no likelihood of harm to the party enjoined, the

6    requirement to post a bond may be dispensed with entirely. *Barahona-Gomez v.*

7    *Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999).

8                          **V. CONCLUSION**

9        For the foregoing reasons, and upon good cause shown, Plaintiffs request the

10   Court grant the following preliminary relief:

11   (a)    A declaratory judgment that Defendants' announced plans to remove all

12   people and property from Camp Hope violate Plaintiffs' rights under the United

13   States Constitution and the Americans with Disabilities Act;

14   (b)    A declaratory judgment that Plaintiffs and other current residents of Camp

15   Hope are legally entitled to reside at this location so long as they have the consent

16   and permission of the property owner, WSDOT;

17   (c)    A declaratory judgment that Defendants' warrantless use of infrared imaging

18   against residents of Camp Hope violates the privacy protections given to all

19   persons under the Washington State Constitution;

20   (d)    A preliminary injunction restraining Defendants from arresting and

21   removing residents of Camp Hope from their current location, or seizing their

22   property, without specific and individualized probable cause to arrest a person for a

PLAINTIFFS' AMENDED MOTION FOR
PRELIMINARY DECLARATORY AND INJUNCTIVE
RELIEF: 20

criminal offense unrelated to an order given by Defendants to disband, move, or otherwise leave Camp Hope;

(e)    A preliminary injunction restraining Defendants from conducting any helicopter overflights of Camp Hope and/or from utilizing infrared imaging or similar technology to surveil or record the residents of Camp Hope, without first obtaining a judicial warrant for such a search.

DATED this 7th day of December, 2022.

*/s/ Jeffry Finer*
JEFFRY K. FINER, WSBA NO. 14610
**KSB LITIGATION, P.S**. (509) 981-8960
jfiner@ksblit.legal

**LAW OFFICE OF ANDREW S. BIVIANO, PLLC**
Andrew S. Biviano, WSBA #38086
25 West Main Avenue, Suite 218
Spokane, WA  99201 (509) 209-2630
Email: andrewbiviano@me.com

**DISABILITY RIGHTS WASHINGTON**
David R. Carlson, WSBA # 35767
901 N. Monroe, Suite 340
Spokane, WA 9921 (206) 324-1521
Email: davidc@dr-wa.org
*Attorneys for Plaintiffs*

PLAINTIFFS' AMENDED MOTION FOR
PRELIMINARY DECLARATORY AND INJUNCTIVE
RELIEF: 21

*KSB LITIGATION, P.S.*
510 W. RIVERSIDE AVE., #300
SPOKANE, WASHINGTON 99201
PHONE (509) 624-8988

**CERTIFICATE OF SERVICE**

I hereby certify that I caused a true and correct copy of the foregoing

PLAINTIFFS' AMENDED MOTION FOR PRELIMINARY DECLARATORY

AND INJUNCTIVE RELIEF (plus any exhibits and/or attachments) to be served

via the method listed below to the following:

| NAME & ADDRESS | Method of Delivery |
|---|---|
| James Bernard King on behalf of CITY OF SPOKANE | ☒ CM/ECF System |
| James Bernard King on behalf of Craig Meidl | ☒ CM/ECF System |
| F Dayle Andersen, Jr on behalf of SPOKANE COUNTY | ☒ CM/ECF System |
| F Dayle Andersen, Jr on behalf of Ozzie Kenezovich | ☒ CM/ECF System |

DATED this 7th day of December 2022.

/s Andrew Biviano

PLAINTIFFS' AMENDED MOTION FOR
PRELIMINARY DECLARATORY AND INJUNCTIVE
RELIEF: 22