LAWRENCE HASKELL
Spokane County Prosecuting Attorney
F. DAYLE ANDERSEN, WSBA #22966
Deputy Prosecuting Attorney
Spokane County Prosecuting Attorney's Office
1115 W. Broadway Avenue, 2nd Floor
Spokane, Washington 99260
509-477-5764
Attorneys for Defendants

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHRISTOPHER SENN; JASON BEWLEY; JERED FULLEN, DISABILITY RIGHTS WASHINGTON, and JEWELS HELPING HANDS,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SPOKANE, a municipal corporation; SPOKANE COUNTY, a municipal corporation; OZZIE KNEZOVICH, in his official capacity as Spokane County Sheriff; CRAIG MEIDL, in his official capacity as Spokane Police Chief,<br><br>Defendants. | No. 2:22-cv-254<br><br>**DEFENDANTS SPOKANE COUNTY AND SHERIFF KNEZOVICH REPLY TO PLAINTIFFS' MOTION FOR PRELIMINARY RELIEF** |

COMES NOW Defendants SPOKANE COUNTY and SHERIFF OZZIE KNEZOVICH (hereinafter "Defendants County") by and through Deputy Prosecuting Attorney F. Dayle Andersen replies to replies motion for temporary restraining order and declaratory judgment:

## I. INTRODUCTION

Since December of 2021, the City of Spokane and Spokane County have had a group of individuals engaged in an active protest concerning funding for homeless persons in the Spokane area. *See* https://www.spokesman.com/stories/2022/dec/04/one-year-later-camp-hope-remains-open-spokanes-may/.

After removing the protest from City Hall the protesters set up an encampment at the location of Ray Streets and Third Avenue in Spokane upon a Washington State Department of Transportation ("WSDOT") right-of-way property. *See,* https://www.spokesman.com/stories/2022/sep/22/knezovich-plans-to-clear-camp-hope-by-mid-october/.

In response to numerous citizens' complaints concerning property vandalism, thefts, prostitution, public urination, defecation and drug use, the County took action by filing a nuisance complaint against WSDOT concerning the activities taking place at the homeless encampment.

The County sought a motion for preliminary injunction before the Spokane County Superior Court and WSDOT filed reply in opposition to such. In their reply to the County's motion, as well as in their letter of interest to the court in this matter, WSDOT identifies the individuals present at the encampment as trespassers.

## II. RESPONSE TO PLAINTIFFS' STATEMENT OF FACTS

Over the last year, the City has created low barrier bed space for homeless individuals at the Trent Regional Assistance Center ("TRAC") along with services to address drug and alcohol abuse, veteran's aid, housing assistance, and mental and behavioral health services.  *See* https://my.spokanecity.org/news/releases/2022/08/30/trent-resource-and-assistance-center-set-to-open/.

The TRAC is expected to have a total of 450 spaces, including both beds (350) and floor mat spaces (100), to provide for low barrier shelter within the next week. https://www.spokanepublicradio.org/regional-news/2022-11-22/salvation-army-faces-staffing-challenges-as-city-prepares-to-expand-new-trent-shelter.

As result of the opening and operation of the TRAC center, as well as, the opening of the Catalyst facility operated by Catholic Charities with an additional 100 beds for transitional housing, a surplus of low barriers bed spaces are expected to exist within the County.  https://www.spokesman.com/stories/2022/dec/05/this-is-what-we-need-gov-inslee-says-of-catalyst-p/.

Following a recent fire at the encampment, as well as helicopter operations, it has been determined that the encampment currently has 240 individuals residing at the homeless encampment.  *See* Declaration of Chief Brian Schaeffer, Declaration M. Voigt filed herein.

As to the inhabitants on the WSDOT right-of-way, there exists or will exist sufficient bed space to shelter the individuals currently residing thereupon.

## III. DISCUSSION

In plaintiffs' motion, the inhabitants assert that they reside on the state property at issue with the consent of the state. The letter of interest from the state paints a difference picture. While WSDOT does tolerate the encampment, they do not appear to consent to the occupation, and identifies them as trespassers.

The plaintiffs rely heavily on the *Martin v. Boise*, 920 F.3d 584(9th Cir., 2019) and *Johnson v. Grants Pass*, 20-35752 (9th Cir., 2022) cases to assert that they possess a constitutional right to the continuing occupation of state owned land. No court cases have provided such an expansive right to homeless individuals.

A.1.  **Plaintiffs Fourth Amendment Invasion Claims**

In their brief plaintiffs assert that their Fourth Amendment, right to privacy, has been violated by law enforcement deploying infrared technology to determine the number of inhabitants at the encampment. Plaintiffs rely on *Kyllo v. U.S.*, 533 U.S. 27 (2001), this reliance is misplaced. *Kyllo* involved an infrared search for a marijuana grow located inside a person's home. Here the plaintiffs reside in tents and trailers located on state owned right-of-way land.

The holding in *Kyllo* was based in part on the fact that government's search was performed by the Government "us[ing a] device that is not in general public use, to explore details of the home that would previously have been unknowable without physical intrusion, the surveillance is a 'search' and is presumptively

unreasonable without a warrant." *Id.* at 40. Since the time of *Kyllo* infrared cameras mounted upon drones have become readily available to the public at large. *See* https://www.amazon.com/dp/B086DVCX8V?tag=projectgoprot-20&th=1&psc=1&geniuslink=true. The ability to purchase and use infrared cameras mounted on drones by the general public significantly erodes the rationalization for the *Kyllo* holding as any reasonably objective person understands that such infrared cameras can be and are used commonly.

Similarly, in *California v. Ciraolo*, the U.S. Supreme Court held that observation "within public navigable airspace . . . in a physically nonintrusive manner . . ." does not constitute an illegal search under the Fourth Amendment. *Id.* 476 U.S. 207, 213, 106 S. Ct. 1809, 1813, 90 L. Ed. 2d 210 (1986). "As a general rule, the observation of a constitutionally protected area by a government agent standing in an open field or a public space does not constitute a 'search' within the meaning of the Fourth Amendment." *United States v. Dellas*, 355 F. Supp. 2d 1095, 1107 (N.D. Cal. 2005), [notes *Kyllo's* reasoning based on use of a device that '*is not in general public use*'].

There is no actionable Fourth Amendment violation that has occurred in this matter as the purported entry was performed in public airspace and infrared camera drones are now commonly available to public, thus diminishing the reasonable expectation of privacy.

**DEFENDANTS SPOKANE COUNTY AND
SHERIFF KNEZOVICH REPLY TO
PLAINTIFFS' MOTION FOR PRELIMINARY
RELIEF Page 5 of 12**

A.2. **Plaintiffs Eight Amendment Claims**

Unlike the *Martin v. Boise*, 920 F.3d 584(9th Cir., 2019) and *Johnson v. Grants Pass*, 20-35752 (9th Cir., 2022), in this instance there is no ordinance or code at issue. The County defendants are not seeking to impose jail sentences or fines. They are seeking to transition homeless individuals using state property to available bed spaces. The County defendants, through judicial process, have sought a determination concerning a continuing nuisance that requires a balancing of interests between residences and businesses adjacent to the encampment and rights of the individuals currently identified as trespassers by the property owner WSDOT. Plaintiffs assert that the individual rights of the trespassers should surpass those of lawful property owners who continue to suffer the consequences of the unlawful and unauthorized acts of the camp inhabitants.

County defendants transitioning individuals on the property into shelters and other facilities is consistent with the court's holdings in the *Martin* and *Johnson* cases. Even assuming for purposes of argument that defendants do not possess sufficient bed spaces for those individuals subject to a purported sweep by defendants via law enforcement, this does not mean that defendants can take absolutely no action. Consistent with both *Martin* and *Johnson*, defendants can transition individuals from the right-of-way to shelter facilities up until the time that such bed spaces are filled.

Given the current understanding of the population of the encampment, sufficient bed spaces are or will be available at the time of any action on the part of the defendants. Were the court to adopt the plaintiffs' argument presented in their request, in any instance where every single homeless person could not be placed into a shelter bed the local authorities could take no action in any circumstances concerning illegal camping on public property. Clearly, this exceeds the scope and intent to the court's rulings in both *Martin* and *Johnson.*

A.3.   **Plaintiffs claim based on First Amendment and Fifth Amendment**

The continuing trespassing and illegal activities upon state property should not be considered protected conduct under the first amendment. Defendants assert that their efforts to transition the encampment inhabitants represent nothing more than reasonable time, place, and manner restrictions.

> [E]ven in a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions 'are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.'
> *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S. Ct. 2746, 2753, 105 L. Ed. 2d 661 (1989).

There is no "inherently expressive" aspect involved in the illegal occupation of state property. *Wong v. Bush*, 542 F.3d 732, 736 (9th Cir. 2008), *citing, Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 126 S.Ct. 1297, 1310, 164 L.Ed.2d 156 (2006).

None of the proposed actions of defendants Spokane County limits the plaintiffs right to freely associate or to express their opinions in a reasonable time, place and manner. Conversely, the admitted criminal activities of the inhabitants at the encampment continue to have a substantial impact on the adjacent property owners.  The rights of the camp inhabitants do not and should not outweigh the rights of the neighbors reasonable enjoyment of their property.

The County defendants do not plan to arrest or confine any of the individuals at the encampment.  The alleged First Amendment violations purported by plaintiffs are invalid.

There is no property taking alleged, there is no violation of a right to jury trial, there is no criminal component applicable to this matter. In fact, both the City and the County have incurred significant expense to provide for the storage of personal property for any inhabitants of the encampment at the TRAC facility.

Plaintiffs argument of guilt by association are nothing more than a misdirection to this court.  The clear relationship between the inhabitants and the demonstrated substantial increase in criminal activity in the area is demonstrated by the numerous declarations on file.  The argument that there is no evidence that "a majority of other residents" have not engaged in criminal activity (*See*, Plaintiff Amended motion, p. 14, ll. 7-9) appears to be an explicit acknowledgement by plaintiffs that there are individuals from the encampment engaged in criminal

activities affecting the neighboring property owners. There is a clear nexus between the inhabitants of the encampment and significant crime increase identified in the area. The purported impact to the encampment inhabitants rights of association and expression should not protect the plaintiffs from the consequences of their acknowledged illegal conduct.

A.4.  **Plaintiffs' ADA Complaints**

The plaintiffs have also asserted that the actions of the defendants will result in violations of certain individual's rights based on the ADA. Plaintiffs' provide mere supposition that some individuals will suffer some unknown consequences as a result of removing these individuals from an unimproved street lot and into a shelter where service providers are engaged in providing active assistance to the inhabitants. It belies reason to argue that disabled individuals are better suited by remaining out in the elements and having to maneuver through an unimproved dirt lot. Yet, this is precisely what they have asserted. The proposed actions of the County of transitioning the camp inhabitants to a permanent building with heat, water and sanitary facilities will provide improved living conditions for individuals currently living in a situation that can considered no better than camping.

Given the significant actions of the City and County to provide for meals, beds, storage of personnel property, medical and behavioral health services,

addiction treatment, and benefits assistance through the TRAC and related facilities, plaintiffs position lacks any basis in fact.

B.  **Plaintiffs have failed to demonstrate irreparable harm**

The arguments submitted by plaintiffs fail to demonstrate any irreparable harm sufficient to grant injunctive relief. The harm suggested by plaintiffs appear to be solely related to the non-meritorious constitutional violations and to stress an instability among the inhabitants based on unreasonable fears of being moved to shelter facilities. Again, plaintiffs fail to recognize or address the conditions that these individuals are currently residing in and the significant detrimental impact that this has on their quality of life. The inhabitants are currently living without heat, with limited sanitary facilities in temporary shelters such a tents, camp trailers, recreational vehicles and pallet and tarp constructions. At least one of the trailers at the site has already caught fire and resulted in its total destruction, highlighting the jeopardy that currently exists for persons residing at the encampment. *See Schaeffer* declaration. As winter progresses, it is highly likely that the camp inhabitants will seek to provide themselves with sources of heat though portable methods. This will likely include portable propane heaters and wood fires increasing the likelihood of fire hazards.

C.  **Motion for Declaratory Judgment**

The right to declaratory relief is set forth in 28 U.S.C §2201 which provides that a court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have force and effect of a final judgment or decree and shall be reviewable by such." *Id.* The plaintiffs seek to have the court rule upon shortened notice and provide declaratory relief with insufficient time or notice for the defendants to respond. Although the court has the authority to advance a matter and consolidate under FRCP 65(a)(2), defendants assert that under these conditions the granting of any such declaratory relief is unnecessary and the necessity to respond by defendants on such short notice places an unfair burden upon them. Defendants Spokane County and Sheriff Knezovich, request that the court deny declaratory relief as requested by plaintiffs herein until such time as the court can be fully briefed on the facts and law, and denying such relief presents no adverse consequences to the plaintiffs.

## IV. CONCLUSION

Defendants respectfully request that the court deny the remedies sought by plaintiffs.

DATED this 9th day of December 2022.

LAWRENCE H. HASKELL
Spokane County Prosecuting Attorney

_____
F. Dayle Andersen, WSBA# 22966
Attorneys for Defendants Spokane County and
Sheriff Ozzie Knezovich

CERTIFICATE OF SERVICE

I hereby certify that on December 9, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system. The NEF for the foregoing specifically identifies recipients of electronic notice.

Ashley E. Musick